UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO JONES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>D. WOODWARD, et al.,<br><br>　　　　Defendants. | Case No.: 1:14-cv-02084-LJO-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PARTIES' MOTIONS FOR SUMMARY JUDGMENT<br><br>[ECF Nos. 25, 28, 29, 30, 31] |

Plaintiff Antonio Jones is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Plaintiff's motion for summary judgment, filed April 21, 2016. On May 31, 2016, Defendants filed an opposition to Plaintiff's motion and a cross-motion for summary judgment. Plaintiff filed an opposition on June 20, 2016, and Defendants filed a reply on June 28, 2016.

**I.**

**BACKGROUND**

This action is proceeding against Defendants D. Woodward and T. Marsh for a due process violation.

Defendants filed an answer to the second amended complaint on July 17, 2015. On July 20, 2015, the Court issued the discovery and scheduling order.

As previously stated, on April 21, 2016, Plaintiff filed a motion for summary judgment. On May 31, 2016, Defendants filed an opposition and cross-motion for summary judgment.

On June 20, 2016, Plaintiff filed a reply to Defendants' opposition and opposition to Defendants' cross-motion for summary judgment.

On June 28, 2016, Defendants filed a reply.

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence. Tulalip Tribes of Washington v. Washington, 783 F.3d 1151, 1156 (9th Cir. 2015); Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re

Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).  The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at this recommendation, the Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties.  Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection.  This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A. Allegations of Second Amended Complaint

Correctional officer Woodward alleged he initiated an investigation into a suspected conspiracy between Plaintiff and his approved visitor M. Cespuglio to introduce controlled substances into California State Prison, Corcoran (CSP-Corcoran) on February 3, 2014.  Woodward further alleged that during the course of his investigation he received information indicating M. Cespuglio brings drugs into the prison packaged in small bindles for her boyfriend to swallow.  He said it was indicated to him that Cespuglio places the bindles in her mouth and then passes it off to her boyfriend while they kiss.

On February 15, 2014, Cespuglio arrived at CSP-Corcoran, the car she arrived in was checked and cleared of drugs. Cespuglio agreed to have an unclothed body search conducted on her with negative results. Cat Scans were also conducted on her with negative results. Cespuglio volunteered to ingest a laxative to help naturally pass four bowel movements with negative results.

Woodward conducted an audio recorded interview with Cespuglio at the Kings County Jail. Plaintiff filed an inmate grievance complaining that confidential information was used in the investigation. The confidential information was never properly recorded by Defendant Woodward. Lieutenant Marsh would not play the audio recording at Plaintiff's rules violation report hearing. Woodward used the confidential information to obtain a search warrant. Warden Jennings found that confidential information was not used in the adjudication of the rules violation report and dismissed the guilty finding.

**B.     Undisputed Facts[1]**

1.     At all times relevant to this action, Plaintiff Antonio Jones (J-97775) was in the custody of the California Department of Corrections and Rehabilitation (CDCR) and confined at California State Prison – Corcoran (CSP – Corcoran). (Defs.' Ex. A, Attach. 1 (DX A-1), Vierra Decl. and Docs. From Plaintiff's central file, pp. 3, 13.)

2.     Jones is serving a term of life without the possibility of parole, plus eighteen years. (DX A-1, pp. 2-3.)

3.     At all times relevant to this action, Defendant Woodward was employed as a Correctional Officer at CSP-Corcoran. (Sec. Amd. Compl. (SAC), ECF No. 9, § III.)

4.      At all times relevant to this action, Defendant Marsh was employed as a Correctional Lieutenant at CSP-Corcoran. (Id.)

5.     Cespuglio began visiting Plaintiff on June 30, 2013, and was listed as Jones' fiancé. (DX A-1, p. 19.) Cespuglio continued to visit Plaintiff on a regular basis until August 10, 2014. (DX A-1, p. 17.)

---

[1] Although Plaintiff submitted a "Notice of Plaintiff's Undisputed Facts," (ECF No. 29), unsupported by any evidence, Plaintiff failed to (1) reproduce the fifty-five facts itemized in Defendants' statement of undisputed facts; (2) admitted each of Defendants' facts that he does not dispute; (3) denied each fact that he disputes; and (4) included with each denial a citation to specific evidence that supports his denial. Local Rule 260(b).

4

6. Officer Woodward began an investigation into a possible conspiracy between Plaintiff and his fiancé to smuggle drugs into the prison. (DX A-1, 33.)

7. As part of the investigation, Woodward reviewed a surveillance video of Plaintiff and Ms. Cespuglio during a visit that occurred on January 26, 2014. (DX A-1, pp. 33-34.) From the video, Officer Woodward was able to identify Ms. Cespuglio and Jones in the Facility 03A visiting room. (DX A-1, p. 33.)

8. The video showed that Plaintiff and Ms. Cespuglio greeted and said good-bye to each other with long, open-mouthed kisses. (DX A-1, p. 34.) During these kisses, their mouths never came apart, so Officer Woodward was not able to see an actual exchange of drugs. (DX A-1, p. 34.)

9. On the same video, Officer Woodward observed what he believed to be Plaintiff and Ms. Cespuglio engaging in oral sex and sexual intercourse. (DX A-1, p. 34.)

10. On February 14, 2014, Officer Woodward obtained a search warrant from Kings County, allowing prison investigators to search Ms. Cespuglio's person, any vehicle registered to, or occupied by her, and any hotel room registered to, or occupied by her. (DX A-1, p. 34.)

11. Ms. Cespuglio arrived at CSP-Corcoran on February 15, 2014, for a visit with Plaintiff. (DX A-1, p. 34.) She was a passenger in a car driven by Rebekah Kelly, who was at the prison to visit inmate Bobo, T-58911. (DX A-1, p. 34.)

12. Officers Woodward and Scaife detained Cespuglio and Kelly, and escorted them to the Administration Building. (DX A-1, p. 34.) Officer Woodward then served Ms. Cespuglio with the search warrant. (Id.)

13. After being read her Miranda rights, Ms. Cespuglio agreed to speak with Officer Woodward. (Id.) When asked if she had any contraband on her person, Ms. Cespuglio said "no."

14. Officer Woodward then asked Ms. Cespuglio if she planned to stay the night at a hotel, and she told him that she was. (DX A-1, pp. 34-35.) When asked if she had already checked in, Ms. Cespuglio stated she had not. (DX A-1, p. 35.)

15. Ms. Kelly consented to a search of her vehicle. (DX A-1, pp. 35, 39.)

16. ISU Officer Slimp searched the car and found an empty container of marijuana from a dispensary, multiple green dot cards, a cell phone, and a container of pepper spray. (DX A-1, p. 39.)

17. Ms. Kelly was escorted to a restroom and subjected to an unclothed body search. (DX A-1, pp. 35, 39.) When Ms. Kelly was finished, Ms. Cespuglio also underwent an unclothed body search. (Id.) Both searches proved negative for drugs. (Id.)

18. While Ms. Cespuglio was still in the restroom, Officer Woodward asked Ms. Kelly if they had checked into a hotel room that morning, and she stated that they had. (DX A-1, p. 35.)

19. Officer Scaife searched Ms. Cespuglio's purse and found a hotel room key. (DX A-1, p. 39.) When asked about it, Ms. Cespuglio told Officer Woodward it was a key from her previous visit. (DX A-1, p. 35.)

20. Officer Scaife and Woodward suspected that there were hidden drugs destined for the prison stashed in the womens' hotel room. (DX A-1, p. 39.) Based on their training and experience, the officer believed that the arrival of Ms. Cespuglio and Ms. Kelly at the prison on February 15, 2014, was a "dry run" during a test visit. (DX A-1, p. 35.)

21. It is common for visitors who live a long distance from the prison to drive up to the prison and rent a room at a nearby hotel for the weekend. (DX A-1, p. 35.) A "dry run" is defined by ISU as a visitor making an initial visit without bringing drugs into the prison in order to observe the security and to determine if they are the subject of a search warrant. (Id.) If all goes well, the visitors bring drugs into the prison during a visit later that same weekend. (Id.)

22. Officers Woodward and Scaife went to the Corcoran County Inn and were informed by hotel management that Ms. Cespuglio had checked into room 208 earlier that morning. (DX A-1, pp. 35, 39.)

23. During a search of the room, Officer Scaife found five small bindles of what appeared to be marijuana, and a Ziploc bag containing loose marijuana, in a black duffle bag belonging to Ms. Kelly. Officer Scaife found more bindles in a bag belonging to Ms. Cespuglio.[2] (DX A-1, at pp. 39-41.)

24. The drugs were wrapped in blue latex. (DX A-1, p. 40.) Because the drugs were wrapped in blue latex packaging, Officer Scaife's training and experience told him that the drugs were

---

[2] Plaintiff attempts to dispute this fact by stating the bindles belonged to Ms. Kelly not Ms. Cespuglio; however, Plaintiff offers no evidence to place this fact in dispute.

6

1 not for personal use, but rather, for introduction into the prison. (Id., p. 39.) Officer Scaife notified
2 Officer Slimp, who collected the bindles as evidence. (Id., p. 40.)

3     25. Officers Scaife and Woodward believed that Ms. Cespuglio and Ms. Kelly might also
4 have bindles of drugs secreted inside their bodies. (DX A-1, pp. 36, 40.) The women were
5 transported to the Adventist Health Medical Center, where they underwent Cat Scans of their
6 abdominal areas. (Id.)

7     26. Ms. Kelly's scan was negative, but Ms. Cespuglio's scan was positive, showing a
8 foreign body in her lower intestines. (DX A-1, p. 36.)

9     27. Ms. Cespuglio voluntarily drank a laxative, and after four bowel movements, she had
10 another Cat Scan. The same object was found in the same area. (DX A-1, p. 36.) The doctor
11 determined that the foreign body was most likely a natural calcium deposit, not a bindle of drugs. (DX
12 A-1, p. 40.)

13     28. Both women were transported and booked into the Kings County Jail for violations of
14 California Penal Code Sections 182, 4573, 4573.8, 4573.9, as well as Health and Safety Code Sections
15 1139, and 11360(b). (DX A-1, pp. 37, 40.)

16     29. Following the arrests of Ms. Cespuglio and Kelly, all staff involved in the incident
17 documented their participation in the events on a Crime/Incident Report, Log No. COR-ISU-14-02-
18 0075. (DX A-1, pp. 23-51.)

19     30. Based on the information documented in the Crime/Incident Report, Officer Woodward
20 also authored a Rules Violation Report, Log No. 3A-14-04-039, charging inmate Jones with
21 "Conspiracy to Introduce and Distribute a Controlled Substance Into CSP-Corcoran." (DX A-1, pp.
22 54-57.)

23     31. On February 15, 2014, Plaintiff received a copy of an administrative segregation unit
24 placement notice, advising him of the charges and that he was being placed into administrative
25 segregation pending the receipt of a toxicology lab report. (DX A-1, p. 52.)

26     32. Officer Woodward submitted the completed Crime/Incident Report, Log No. COR-
27 ISU-14-02-0075, to the Kings County District Attorney's Office for Plaintiff's possible prosecution.
28 (Defs.' Ex. B (BX B), Decl. of D. Woodward, ¶ 17.)

7

1    33.     Woodward initially faxed a copy of the completed CDCR Form 837 to the Kings County District Attorney's Office, and later hand delivered a copy of the same CDCR Form 837 to the Kings County District Attorney's Office, along with a request for case review.  (DX B, ¶¶ 17-18.)

34.     The information supplied to the Kings County District Attorney's Office is the same documentation and information that Woodward used to file the rules violation, Log No. 3A-14-04-039, against Plaintiff.  (DX B, ¶ 19.)

35.     On February 28, 2014, the Kings County District Attorney's Office filed a criminal complaint against Plaintiff, charging him with felony oral copulation while confined in a prison, the misdemeanor of engaging in or soliciting lewd conduct in a public place, and felony possession of drugs where prisoners are kept.  (DX A-1, pp. 103-104.)

36.     The Toxicology Lab Report was received at CSP-Corcoran on April 28, 2014.  The report positively identified the evidence collected at the Corcoran Country Inn as marijuana.  (DX A-1, pp. 54, 66.)

37.     On May 15, 2014, Plaintiff was offered the assignment of an investigative employee to assist him with the disciplinary hearing, which Plaintiff waived.  (DX A-1, p. 58.)

38.     On June 4, 2014, Plaintiff appeared at his disciplinary hearing to adjudicate the charge of "Conspiracy to Introduce and Distribute a Controlled Substance into CSP-Corcoran."  (DX A-1, pp. 58-63.)

39.     Lieutenant Marsh was the Senior Hearing Officer who conducted the hearing.  (DX A-1, pp. 54, 58-63.)

40.     At the hearing, Lieutenant Marsh advised Plaintiff of the charges against him and the purpose for the hearing.  (DX A-1, p. 58.)  Plaintiff acknowledged that he had received a copy of all pertinent reports more than twenty-four hours before the hearing.  (Id.)

41.     Plaintiff pled "not guilty" to the charge, and then stated "they didn't prove any conspiracy.  They have no communication between me and my ol' lady."  (DX A-1, p. 59.)  Plaintiff did not make, or request to make, any other statements.  (DX A-1, pp. 58-63.)

42.     Plaintiff did not present any witnesses at the disciplinary hearing.  (DX A-1, p. 59.)

43. Evidence presented at the hearing included the Rules Violation Report, Log No. 3A-14-04-039; the Crime/Incident Report, Log No. COR-ISU-14-02-0075; a Supplemental Serious Rules Violation Report dated April 28, 2014; a Mental Health Chrono dated April 28, 2014; a Mental Health Assessment dated May 6, 2014; the Toxicology Lab Report; and photographic and video evidence. (DX A-1, pp. 59-62.)

44. Based on the totality of the evidence presented, Lieutenant Marsh found Plaintiff guilty of the charge of "Conspiracy to Introduce and Distribute a Controlled Substance Into CSP-Corcoran." (DX A-1, pp. 58, 59-62.)

45. Plaintiff was assessed 180 days credit forfeiture, ten days loss of yard, thirty days loss of entertainment appliances, mandatory random drug testing, with a minimum of four drug tests per month for one year, a loss of visits for 180 days, and required attendance at Alcoholics/Narcotics Anonymous meetings. (DX A-1, pp. 58, 71-73.) Plaintiff was advised of his rights to appeal the decision. (DX A-1, p. 63.)

46. On July 2, 2014, Plaintiff submitted an inmate appeal claiming that there was no evidence to support the finding that he conspired with his approved visitor, Michele Cespuglio, to bring drugs into the prison. (DX A-1, p. 96.) Plaintiff also claimed that his due process rights were violated because Officer Woodward had used confidential information, but had not provided Plaintiff with the proper form in violation of CDCR policies. (DX A-1, pp. 96-97.)

47. Plaintiff requested that the guilty finding be reversed, and that the case be dismissed in full. (DX A-1, p. 96.)

48. Plaintiff's appeal was granted by Chief Deputy Warden Jennings on July 15, 2014. (DX A-1, pp. 100-101.) Jennings found that Plaintiff's argument had "merit." (DX A-1, p. 101.)

49. A modification order was issued on July 17, 2014, dismissing the guilty finding in the interest of justice. (DX A-1, p. 102.)

50. On July 10, 2015, Plaintiff was released from administrative segregation. (DX A-1, p. 80.)

51. During his five-months in administrative segregation, Plaintiff was allowed to shower every other day, and allowed out of cell for outdoor exercise. (DX A-1, pp. 80-94.) Plaintiff routinely refused to go outdoors. (Id.)

52. On April 6, 2015, Plaintiff pled "nolo contendere" to the charge of possession of drugs where prisoners are kept. (DX A-1, p. 111.) Plaintiff was assessed the upper term of four years, with a stipulation of zero time credits. (Id., p. 112.) The four year term was to be served consecutively to his current sentence. Plaintiff was also assessed $1,450.00 in fees and restitution. (Id., p. 111.)

53. The remaining charges against Plaintiff for oral copulation while confined in prison and engaging in or soliciting lewd conduct in a public place were dismissed on motion of the People. (Id.)

### C. Due Process – Fourteenth Amendment

The Fourteenth Amendment protects individuals from the deprivation of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). "A prisoner's right to due process in connection with placement in administrative segregation arises only when such segregation implicates a protected liberty interest in some unexpected manner, or imposes an '"atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."' Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting Sandin v. Connor, 515 U.S. 472, 484 (1995)).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556, (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), abrogated on other grounds by Sandin v. Connor, 515

U.S. 472. In addition "[s]ome evidence" must support the decision of the hearing officer. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion reached . . . ." Id. at 455-56 (emphasis added).

A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. See Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making. See Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983).

### D. Plaintiff's Motion for Summary Judgment

Plaintiff contends that his due process rights were violated at the rules violation report hearing because he was not afforded the five minimum requirements under Wolff and unsubstantiated information was used in the investigation. In support of his motion, Plaintiff submits discovery responses from Defendants, along with a copy of his inmate appeal and the second level response, and page 1 of the rules violation report.

Plaintiff bears the burden of proof at trial. To prevail on his motion for summary judgment against Defendants, Plaintiff must affirmatively demonstrate that no reasonable trier of fact could other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If Plaintiff meets his initial burden, Defendants are required to set forth specific facts showing there is a genuine issue for trial.

First, Plaintiff did not comply with Local Rule 260(a), which requires that "[e]ach motion for summary judgment or summary adjudication shall be accompanied by a 'Statement of Undisputed Facts' that shall enumerate discretely each of the specific material relied upon in support of the motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon to establish that fact." Although Plaintiff filed a "Notice of Plaintiff's Undisputed Facts" on June 20, 2016, it was not filed contemporaneously with his motion for summary

judgment, and it fails to enumerate each specific piece of material relied upon for support. Second, the evidence submitted by Plaintiff does not support his claim for summary judgment in his favor. Although the Court may consider a verified complaint as evidence for purposes of summary judgment, in this instance, Defendants oppose Plaintiff's motion for summary judgment, along with declarations and evidence to demonstrate entitlement to summary judgment as a matter of law. The fact that Plaintiff's rules violation report was reversed by Chief Deputy Warden Jennings, does not, alone, demonstrate a due process violation. In addition, the fact a prison regulation may have been violated, does not give rise to a constitutional due process violation. Simply stated, the discovery responses, inmate appeal and response thereto, and rules violation report do not support a finding of a Fourth Amendment violation entitling Plaintiff to summary judgment in his favor. Accordingly, Plaintiff's motion for summary judgment should be denied.

### E. Defendants' Motion for Summary Judgment

Defendants initially argue that Plaintiff's claims are barred by the holding in Heck v. Humphrey, 512 U.S. 477 (1994). Defendants also argue Plaintiff received all the required due process at the disciplinary hearing, and Plaintiff did not possess a liberty interest in avoiding disciplinary housing. In the alternative, Defendants argue they are entitled to qualified immunity.

Here, Plaintiff contends that his due process rights were violated when Defendant Woodward falsified a rules violation report, causing Plaintiff to be placed into administrative segregation for several months. Plaintiff also alleges that he was denied due process at his disciplinary hearing because Defendant Marsh refused to play an audiotape allegedly containing exculpatory evidence during the hearing.

#### 1. Due Process Claims Barred by Heck v. Humphrey

Defendants argue that Plaintiff's due process claims are barred by the Supreme Court's holding in Heck v. Humphrey, 512 U.S. 477 (1994).

Under Heck, a prisoner may not proceed on a claim for damages under § 1983 if a judgment favoring plaintiff "would necessarily imply the invalidity of his conviction or sentence." Heck, 512 U.S. at 487; Edwards v. Balisok, 520 U.S. 641, 648 (1997) (applying Heck to a prison disciplinary hearing where good-time credits were affected). In such a case, Plaintiff is foreclosed from

proceeding absent proof that the conviction or sentence has been reversed, expunged or invalidated. Id. at 486-487. However, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed …." Id. at 487. As an illustration of the rule's application, the Heck Court explained that an individual convicted of resisting arrest, defined as intentionally preventing a peace officer from affecting a lawful arrest, would be barred from bringing a damages claim for unlawful arrest. Id. at 487 n. 6. That result is compelled by the fact that plaintiff, in order to prevail on his § 1983 claim, would have to negate an element of his conviction offense: the lawfulness of the arrest. Id.

Plaintiff argues that because he is serving a life sentence without the possibility of parole, the Heck bar does not apply. The Court finds Plaintiff's argument has merit. It is undisputed that Plaintiff is serving a term of life without the possibility of parole, plus eighteen years. (DX A-1, pp. 2-3.) Success on Plaintiff's challenge to the disciplinary proceeding would not necessarily lead to immediate or earlier release from custody or a reduction of the level of custody.[3] The fact that Plaintiff was subsequently convicted of possession of drugs where a prisoner is kept and sentenced to a subsequent term of four years (to be served consecutive to life sentence) will not have any impact on the length or duration of Plaintiff's present life sentence without the possibility of parole, and the Court therefore finds the Heck bar inapplicable to Plaintiff's due process claims in the present action. See, e.g., Nettles v. Grounds, 830 F.3d 922 (9th Cir. 2016) (en banc) (finding that a prisoner's claim which, if successful, would not necessarily lead to immediate or speedier release fell outside the "core of habeas corpus" and section 1983 was the proper vehicle); see also Hammler v. Wright, No. 2:15-cv-1635-EFP P (E.D. Cal. Aug. 3, 2016) (noting life term inmate would not serve a shorter sentence if he had not forfeited loss of credits and section 1983 proper vehicle to bring claim); Roman v. Knowles, No. 07cv1343-JLS (POR), 2011 WL 3741012, *12 (S.D. Cal. June 20, 2011) (finding when serving

---

[3] Speedier release from custody also includes reduction of the level of custody. See Nettles v. Grounds, 788 F.3d 992, 995 (9th Cir. 2015) (citing Skinner, 562 U.S. at 535 n.13), on reh'g en banc, 830 F.3d 922 (9th Cir. 2016). There is no claim that Plaintiff's level of custody was impacted after his state court conviction for possession of drugs where a prisoner is kept.

1  life term loss of good-conduct credits will have no effect on the inmate's sentence and claim was not
2  barred by Heck).

    2.      Due Process Received at the Disciplinary Hearing

    The Court finds that Defendants have met their initial burden of proof in demonstrating that Plaintiff received all of the process he was due under Wolff.

    Plaintiff was charged with a disciplinary violation for conspiracy to introduce and distribute a controlled substance into CSP-Corcoran on February 15, 2014.  (DX A-1, pp. 54-57.)  Plaintiff was provided notice of the rules violation on February 15, 2014 and that he was being placed into administrative segregation pending the receipt of a toxicology report.  (DX A-1, p. 52.)  Plaintiff attended his disciplinary hearing for the rules violation on June 4, 2014.  (DX A-1, pp. 58-63.)  Plaintiff received notice of the hearing, and was provided a packet of all pertinent documents more than twenty-four hours prior to the hearing.  (DX A-1, p. 58.)  Plaintiff was offered an investigative employee, but waived such request.  (Id.)

    The hearing was conducted by Lieutenant Marsh, acting as the senior hearing officer.  (DX A-1, pp. 54, 58-63.)  The charges were read to Plaintiff, who pled "not guilty," and then stated, "[t]hey didn't prove any conspiracy.  They have no communication between me and my ol' lady."  (DX A-1, pp. 58-63.)  The evidence presented at the hearing consisted of the rules violation report, the crime incident report, the serious rules violation report dated April 24, 2014, the toxicology lab report indicating that the substance confiscated from Ms. Cespuglio's hotel room was marijuana, the evidence review chrono, and photographic and video evidence.  (DX A-1, pp. 59-62.)

    Plaintiff argues that Lieutenant Marsh should have considered the audio recording interview of Ms. Cespuglio as support of Plaintiff's defense.  The record of the disciplinary proceeding shows that Plaintiff waived his right to staff and investigative assistance, and a determination was made that no additional information was necessary to present an adequate defense.  (DX A-1, p. 58.)  In addition, Plaintiff never made a specific request to introduce or request review of the audio recording interview of Ms. Cespuglio.  Indeed, in the inmate appeal, Log No. CSP-C-14-04516, Plaintiff merely stated Lieutenant "Marsh elected to find me guilty without listening to the primary evidence [audio recording interview of Ms. Cespuglio] which clearly shows that I did not conspire to introduce drugs into

14

1   CSP/Corcoran." (DX A-1, p. 98.) The fact that Lieutenant Marsh did not listen to the recording of the
2   interview is of no consequence as there is no requirement that certain evidence be reviewed prior to a
3   finding of guilt.
4         In any event, Plaintiff fails to demonstrate how the audio recording of the interview would
5   have changed the outcome of the proceeding. Plaintiff does not explain how the interview, which
6   supposedly contains exculpatory evidence, would have altered the disposition for conspiracy to
7   introduce and distribute a controlled substance into CSP-Corcoran. Indeed, to the contrary, the
8   crime/incident report by Woodward documented the following statements by Ms. Cespuglio during
9   the interview: "[Ms. Cespuglio] told us Rebekah had arrived at her house at approximately 0230 hours
10  the night prior with the marijuana and packed it into the small blue bindles. On the way to Corcoran
11  that morning Rebekah expressed to [Ms. Cespuglio] she was apprehensive about bringing the
12  marijuana into the prison. [Ms. Cespuglio] had told her if she was scared then she shouldn't do it and
13  she should just leave them in the hotel room. When asked about the two bindles in her bag, [Ms.
14  Cespuglio] stated those bindles were hers and she in fact knew there was marijuana in them. It should
15  be noted throughout the course of the day [Ms. Cespuglio] talked about regularly smoking marijuana
16  and bragged about the quality and quantity of marijuana she had access to. Based on her comments
17  and my training and experience, I don't believe she would possess marijuana packaged in two small
18  bindles for any other reason than to introduce them into the prison to be passed to her boyfriend,
19  [Plaintiff]." (DX A-1, pp. 36-37.) Even if Lieutenant Marsh listened to entire interview of Ms.
20  Cespuglio's and assuming Ms. Cespuglio said that Plaintiff had no knowledge of any drugs to be
21  brought into the prison, there is no basis to determine the finding would have been different. In
22  finding Plaintiff guilty, Lieutenant Marsh relied on the Rules Violation Report, Log No. 3A-14-04-
23  039; the Crime/Incident Report, Log No. COR-ISU-14-02-0075; a Supplemental Serious Rules
24  Violation Report dated April 28, 2014; a Mental Health Chrono dated April 28, 2014; a Mental Health
25  Assessment dated May 6, 2014; the Toxicology Lab Report; and photographic and video evidence.
26  (DX A-1, pp. 59-62.)
27        It is undisputed that Lieutenant Marsh allowed Plaintiff the opportunity to call witnesses, but
28  he declined to do so. (DX A-1, p. 59.) It is also undisputed that Marsh gave Plaintiff the opportunity

1 to make statements in his defense, and Plaintiff denied the charges stating no conspiracy was proven.
2 (DX A-1, pp. 58-63.) It is likewise undisputed that after finding Plaintiff guilty of the charge of
3 Conspiracy to Introduce and Distribute a Controlled Substance into CSP-Corcoran, Marsh issued a
4 lengthy and detailed report summarizing the charges, evidence, and decision. (DX A-1, pp. 58-62.)
5 Lastly, some evidence supports the disciplinary violation and conviction. Plaintiff's conviction was
6 not based on a single piece of evidence, or a confidential hearsay statement. The conviction was based
7 mainly on the reports authored by several officers, each of whom had first-hand knowledge of the
8 information contained in the reports. (DX A-1, pp. 23-51, 54-57.) The information given by these
9 officers was corroborated and indirectly supplemented by both videotaped evidence and a toxicology
10 report. (DX A-1, pp. 59-62.)

11 Chief Deputy Warden Jennings subsequently dismissed the rules violation report finding the
12 senior hearing officer failed to prove Plaintiff was involved in a conspiracy with the Ms. Cespuglio to
13 introduce marijuana into the institution for purposes of distribution. (DX A-1, p. 102.) However, the
14 fact that a different decision maker later found Plaintiff not guilty of the charges does not mean there
15 was insufficient evidence to support the finding of guilt. (DX A-1, pp. 59-62.) The Chief Deputy
16 Warden's determination that Plaintiff's grievance "had merit", does not conclusively demonstrate that
17 Defendant Marsh lacked sufficient evidence to find Plaintiff guilty. (DX A-1, pp. 59-62, 101.) It
18 simply means that another person weighed the evidence differently. The United States Constitution
19 demands due process, not error-free decision-making. McCrae v. Hankins, 720 F.2d 863, 868 (5th
20 Cir. 1983); see also Wilson v. Brown, No. C 05-3949, 2008 WL 1930637, at *1 (N.D. Cal. May 1,
21 2008) ("Plaintiff's claim that Defendant erroneously found Plaintiff guilty of violating prison rules
22 also is not cognizable. The fact that a prisoner may have been innocent of the charges does not raise a
23 constitutional issue because the Constitution demands due process, not error-free decision-making.")

24 Plaintiff's claim that his due process rights were violated because he was not provided a form
25 disclosure of confidential information, fails to give rise to a constitutional claim. A violation of state
26 regulations or prison policies, standing alone, cannot form the basis of a viable section 1983 claims.
27 See West v. Atkins, 487 U.S. 42, 48 (1988). Thus, California regulations, such as Title 15 of the
28 California Code of Regulations section 3321, do not dictate the outcome of the federal due process

16

1 analysis and the Title 15 regulations governing the conduct of prison officials do not entitle an inmate
2 to civil redress for their violation.  See Vasquez v. Tate, No. 1:10-cv-01876-JLT (PC), 2012 WL
3 6738167, at *9 (E.D. Cal. Dec. 28, 2012); Davis v. Powell, 901 F.Supp.2d 1196, 1211 (S.D. Cal.
4 2012).  Accordingly, Defendants are entitled to summary judgment on this claim.

   3.  Liberty Interest in Avoiding Disciplinary Housing

Defendants argue that Plaintiff did not possess a liberty interest in avoiding disciplinary housing.

The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  To state a claim, Plaintiff must first identify the interest at stake.  Wilkinson, 545 U.S. at 221. Liberty interests may arise from the Due Process Clause itself or from state law.  Id.  The Due Process Clause does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue.  Id. at 221-23 (citing Sandin v. Conner, 515 U.S. 472, 481-84 (1995)) (quotation marks omitted).  Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  Id. at 221(citing Sandin, 515 U.S. at 484) (quotation marks omitted); Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

Although there is no single standard for determining whether a prison hardship is atypical and significant, the Supreme Court in Sandin cited three factors that provide a framework for determining whether disciplinary segregation imposes the requisite hardship: "(1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence."  See Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003).

Plaintiff argues that his placement in disciplinary segregation for five-months violated due process because it constitutes "an atypical hardship."  Plaintiff contends he was confined to his cell

twenty-four hours a day, and made to visit behind glass. (ECF No. 25, 9:2-6.) In his opposition, Plaintiff contends the conditions in administrative segregation and the security housing unit were atypical of his ordinary prison life, and imposed significant hardships on him because: (1) he was denied visitation rights; (2) denied yard every day; (3) denied telephone privileges; and (4) delivery of food packages. (ECF No.30, Opp'n at 4.)

Plaintiff has failed to establish the existence of a protected liberty interest. Defendants submit Plaintiff's segregation log during the relevant five months period which shows that Plaintiff was offered time on the exercise yard, but routinely refused to go. (DX A-1, pp. 80-94.) While segregated housing may be more restrictive than the general population housing, it does not constitute "a dramatic departure from the basic conditions of . . . confinement." Sandin, 515 U.S. at 485. Moreover, Plaintiff does not possess a liberty interest in remaining in general population while criminal charges are pending against him. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997). In this instance, Plaintiff was issued the rules violation report, Log No. 3A-14-04-039 and administrative segregation unit placement notice (CDC 114-D) on February 15, 2014; the crime/incident report, Log No. COR-ISU-14-02-0075 on or about February 16, 2014; a supplemental rules violation report was issued on April 28, 2014; the toxicology report was returned to the prison affirming the substance as marijuana on April 28, 2014; and the rules violation hearing took place on June 4, 2014, and Plaintiff was released from administrative segregation on July 10, 2014. After Plaintiff's release the rules violation report was reversed by Chief Deputy Warden Jennings on July 15, 2014, and a modification order was issued on July 17, 2014. The Court finds that Plaintiff has failed to demonstrate a due process violation arising from his placement in administrative segregation from February 15, 2014 to July 10, 2014-145 days, because this interval did not constitute an unreasonable length of time and the conditions did not constitute a dramatic departure from the basic conditions of confinement. Sandin, 515 U.S. at 485; see also Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983) ("[T]he decision to continue confinement of an inmate pending investigation of misconduct charges depends upon circumstances

which prison officials will be well aware of—most typically, the progress of the investigation."). Accordingly, Defendants are entitled to summary judgment on this claim.[4]

## IV.
## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment be denied; and
2. Defendants' motion for summary judgment be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **December 19, 2016**

UNITED STATES MAGISTRATE JUDGE

---

[4] Because the Court finds that Defendants are entitled to summary judgment on the merits of Plaintiff's claims, there is no need to address entitlement to qualified immunity.